IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALAN T. DEFFIBAUGH, | : | |
|     Plaintiff, | : | Civil Action No. 1:09-cv-1749 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| DWIGHT HARVEY, JOHN BROWN, | : | |
| STACY GELVIN, JOHN STCHUR, | : | |
| JEFFREY WATSON, WILLARD | : | |
| OLIPHANT, TARA PATTERSON, and | : | |
| THE PENNSYLVANIA STATE POLICE | : | |
|     Defendants | : | |

## MEMORANDUM

Before the Court is Defendant Dwight Harvey's motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 13.) In his motion, Defendant argues that all claims against him should be dismissed because of either absolute or qualified immunity. For the reasons that follow, the motion will be granted in part and denied in part.

### I.  BACKGROUND[1]

Plaintiff Alan Deffibaugh is a police trooper with the Pennsylvania State Police ("PSP"). (Comp. ¶ 22.) From 2001 to 2006, Deffibaugh worked at the McDonnellsburg Barracks in Fulton County, Pennsylvania. (Id. ¶ 23.) On May 2, 2006, Deffibaugh was transferred to the Bedford station for "something to do with Stacy Gelvin," a fellow officer and named Defendant in this case. (Id. ¶¶ 24-25.) The transfer resulted in Deffibaugh having to surrender his gun and badge, and he was restricted to "desk duty." (Id. ¶¶ 26-27.)

In July 2006, Defendants Willard Oliphant and John Stchur of the PSP Internal Affairs

---

[1]In accordance with the standard of review for motions to dismiss, the Court takes all factual allegations in the complaint as true and in the light most favorable to Plaintiff.

Department ("IAD") began an investigation into allegations Defendant Gelvin brought against Deffibaugh for harassment and inappropriate touching. (Id. ¶¶ 28, 31.) Later, the investigation was expanded to include allegations he confronted Gelvin in public at a Wal-Mart. (Id. ¶ 36.) Though the IAD sought to interrogate Deffibaugh on numerous occasions about Gelvin's allegations, Deffibaugh did not consent. (Id. ¶¶ 28, 31-33.) Deffibaugh maintains he never approached Gelvin outside the workplace (she approached him) and that all Defendants knew Gelvin to be a "habitual liar." (Id. ¶¶ 35-37.) Deffibaugh also states that IAD was aware that Gelvin's allegations rendered her testimony at an unrelated civil trial perjurious. (Id. ¶¶ 47-48.)

On or about February 2007, Defendant Stchur told Deffibaugh that Defendant Harvey, District Attorney for Fulton County, was "supervising" Stchur and that Harvey "wants [Deffibaugh] arrested." (Id. ¶¶ 39-40.) On March 16, 2007, Defendant Watson arrested Deffibaugh. (Id. ¶ 62.) Deffibaugh was suspended without pay. (Id. ¶ 63.)

On or about June 26, 2007, Deffibaugh was formally arraigned in the Court of Common Pleas of Fulton County on charges of indecent assault, indecent exposure, stalking, and harassment. (Id. ¶¶ 41, 64.) Though Gelvin had made similar accusations against two other troopers, Trooper Copley and Trooper Kagarise, charges were only brought against Plaintiff Deffibaugh. (Id. ¶ 45, 61.) In a court proceeding for Deffibaugh's criminal case, Defendant Harvey explained that he did not have sufficient information to sustain charges against the other two officers. (Id. ¶ 61.)

PSP and the Commonwealth attorneys did not fully cooperate with Deffibaugh's attorney during the state criminal proceedings against Deffibaugh. (Id. ¶¶ 50, 53-58.) Attorneys for the Commonwealth, viewing the discovery requests as "burdensome," withheld internal IAD

documents and disobeyed court orders to disclose documents. (Id.)

On July 15, 2008, the District Attorney's office dropped all criminal charges against Deffibaugh. (Id. ¶ 59.) Deffibaugh was reinstated to his desk duty position on July 20, 2008, though the desk duty restrictions remain in place to this day. (Id. ¶ 65.) Deffibaugh never received back pay for the one year and three month period he was suspended. (Id. ¶¶ 65-67.)

Deffibaugh brings this § 1983 action alleging that he was retaliated against for his decision to not participate in the IAD investigation. He further alleges that his arrest and demotion constituted a violation of his right to be free from arrest and seizure except upon probable cause and his right to equal protection of the laws.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint, Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993), and is properly granted when, taking all factual allegations and inferences as true, the moving party is entitled to judgment as a matter of law. Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990). The burden is on the moving party to show that no claim has been stated. Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980). Thus, the moving party must show that Plaintiff has failed to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that those elements exist." Kost, 1 F.3d at 183 (citations omitted). A court, however, "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906, 908 (3d Cir. 1997). Indeed, the Supreme Court has recently held that while the 12(b)(6) standard does not require "detailed factual allegations," there must be a "'showing,' rather than a blanket assertion of entitlement to relief. . . . '[F]actual

allegations must be enough to raise a right to relief above the speculative level.'" Phillips v. County of Allegheny, 515 F.3d 224, 231-32 (3d Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Put otherwise, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1955 (2009)).

## III. DISCUSSION

Defendant Harvey argues that the allegations against him must be dismissed in their entirety due to either absolute immunity or qualified immunity. Plaintiff contends that, because his allegations against Harvey are that Harvey improperly advised PSP officers to arrest Plaintiff, Harvey, at best, is entitled only to qualified immunity. Further, Plaintiff argues that the allegations are sufficient to withstand a qualified immunity defense at this stage in the litigation.

Immunity is an affirmative defense. Thomas v. Independence Twp., 463 F.3d 285, 293 (3d Cir. 2006) ("[T]he burden of pleading qualified immunity rests with the defendant, not the plaintiff."). As such, it can only be the basis for dismissal under Rule 12(b)(6) if it is clear from the face of the complaint that immunity applies; a plaintiff need not affirmatively "plead out" of an immunity defense. Id. ("[A] plaintiff has no obligation to plead a violation of clearly established law in order to avoid dismissal on qualified immunity grounds."). Absolute immunity attaches to a prosecutor for "all actions performed in a 'quasi-judicial' role" including out-of-court behavior "'intimately associated with the judicial phases' of litigation." Kulwicki v. Dawson, 969 F.2d 1454, 1463 (3d Cir. 1992) (quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). Actions done by a prosecutor in an investigative or administrative capacity, however, are only protected by qualified immunity. Id. To determine which immunity applies to a

4

prosecutor's actions, a court should "focus on the nature and function performed rather than on the identity of the actor who performed it," and analyze each allegedly unlawful action independently. Kulwicki, 969 F.2d at 1463-66; Pansy v. Preate, 870 F. Supp. 612, 628 (M.D. Pa. 1994). The presumption is that qualified immunity, rather than absolute immunity, applies. Kulwicki, 969 F.2d at 1465.

The Court culls from the complaint the following factual allegations against Defendant Harvey. Defendant Harvey "supervised" Defendant Stchur and advised him on what charges to file against Plaintiff Deffibaugh, though he knew there was no probable cause to support the charges. (Comp. ¶¶ 1, 14, 39.) Harvey told Stchur he wanted to have Deffibaugh arrested. (Id. ¶ 40.) Harvey knew Defendant Gelvin to have given perjured testimony in a prior court proceeding and to be a "habitual liar," but he nonetheless used her allegations as a basis for criminal prosecution against Deffibaugh. (Id. ¶¶ 30, 37.) Harvey initiated formal charges of stalking, indecent assault, indecent exposure, and harassment against Deffibaugh in the Court of Common Pleas of Fulton County. (Id. ¶¶ 41, 59, 64, 65, 68.) Harvey did not pursue perjury charges against Defendant Gelvin. (Id. ¶ 16.) Harvey disobeyed Judge Walker's March 26, 2008 Court Order to answer Deffibaugh's discovery requests in the criminal case against Deffibaugh. (Id. ¶ 21.) Harvey did not bring criminal charges against Copley or Kagarise, though Gelvin had made similar accusations of harassment against them. (Id. ¶¶ 38, 61.)

Certain of these allegations may be easily disposed with as subject to absolute immunity. The allegations that Defendant Harvey filed or did not file criminal charges must be dismissed, as filing official charges is the quintessential prosecutorial function to which absolute immunity applies. Imbler v. Pachtman, 424 U.S. 409, 421-424 (1976); Kulwicki, 969 F.2d at 1463-64

("The decision to initiate a prosecution is at the core of a prosecutor's judicial role. A prosecutor is absolutely immune when making this decision, even where he acts without a good faith belief that any wrongdoing has occurred."). Even allegations of improper motive or personal animus do not remove the shield of absolute immunity from prosecutorial decisions to, or not to, initiate a prosecution. Kulwicki, 969 F.2d at 1464. Therefore, Plaintiff's claims that Defendant Harvey himself brought baseless criminal charges against Plaintiff are covered by absolute immunity, as are his decisions not to bring charges against Gelvin, Copley, and Kagarise. Likewise, Harvey's decisions regarding disclosure of documents and compliance with court discovery orders are shielded by absolute immunity. Such decisions were directly related to, and in furtherance of, his advocacy role in the pending criminal proceedings against Deffibaugh.

The only allegations that remain are that Harvey had "active involvement in advising and conspiring with the defendant Stchur as to what charges to bring against Trooper Deffibaugh while both knew there was no probable cause to support the charges," and that Harvey told Stchur he wanted Deffibaugh arrested. (Comp. ¶¶ 14, 16, 39.) Plaintiff's Complaint is unclear as to the context of Deffibaugh's assertion that he wanted Plaintiff arrested and the extent and timing of the advice and supervision he gave to Defendant Stchur. Plaintiff argues that these actions should be classified as "giving legal advice to the police," which is entitled only to qualified immunity. Van de Kamp v. Goldstein, 129 S.Ct. 855, 861 (2009); Burns v. Reed, 500 U.S. 478, 496 (1991). A district attorney's advice that an officer should arrest or bring charges against a suspect is entitled to absolute immunity if it is done in conjunction with a prosecution or in preparation for the prosecution. Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993) ("[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and

6

which occur in the course of his role as an advocate for the State are entitled to protections of absolute immunity."); Kulwicki, 969 F.2d at 1465 ("Immunity extends to 'the preparation necessary to present a case,' and this includes the 'obtaining, reviewing, and evaluation of evidence.'"). Yet, advice to the police as to the proper means of investigating or conducting traditional police functions, including whether to make an arrest, is not covered by absolute immunity. Ewing v. City of Stockton, 588 F.3d 1218, 1234 (9th Cir. 2009) (no absolute immunity for prosecutor's advice to police regarding the existence of probable cause to arrest); Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) ("Nor is advising the police during the investigative stage of a case that they have probable cause to arrest an advocacy function."). One factor to consider in making this distinction is the timing between the filing of an official criminal complaint and the alleged action. Kulwicki, 696 F.3d at 1465. Though the filing of a criminal complaint is not a "foolproof measure of the commencement of quasi-judicial activity," actions completed at or after the filing are "likely to be connected with an existing prosecution." Id. at 1466.

Plaintiff's Complaint indicates that Harvey's statements and advice to Stchur occurred at least a month prior to Harvey's decision to file charges against Deffibaugh. The time lapse between Harvey's decision to initiate his prosecution and his advise to IAD investigators regarding the arrest of Deffibaugh is sufficient for the Court to find that Harvey's alleged advice to Stchur may not have been intimately connected to his decision to initiate prosecution. Accordingly, the Court cannot at this time extend absolute immunity to Harvey for the claims that he "advised" Stchur and "supervised" his actions. See Yarris v. County of Delaware, 465 F.3d 129, 138-39 (3d Cir. 2006) (declining to extend absolute immunity at motion to dismiss

stage when the complaint did not provide factual detail to enable the court to determine whether the prosecutors' alleged actions were intimately related to their judicial functions). The Complaint does not consist of sufficient factual context for the Court to determine whether Harvey's assistance and directive to Stchur were "intimately related" to Harvey's decision to commence the prosecution or whether Harvey's advice to Stchur simply facilitated the police investigation. Such a finding does not end the matter, however, because the Court must now consider whether qualified immunity shields Harvey from these allegations.

Qualified immunity shields government officials from liability in § 1983 cases "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 129 S.Ct. 808, 815 (2009). To determine if qualified immunity applies, a court must consider 1) whether the deprivation of a constitutional right has been alleged and 2) whether the right was clearly established. Id. at 818. If the plaintiff has shown the deprivation of a clearly established right, the official is subject to liability unless the official's actions were "objectively reasonable" under the circumstances. Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995).

Aggregating the remaining factual allegations against Harvey, Plaintiff has alleged that Harvey directly supervised and advised Stchur to charge Deffibaugh and Defendant Watson to arrest Deffibaugh for harassment when all Defendants knew there was not probable cause to make the arrest. Arresting someone without probable cause is a violation the Fourth Amendment, and it is a right that was clearly established in 2007. See Orsatti, 71 F.3d at 482 ("[T]here is no question that the right at issue, namely, the right to be free from arrest except on probable cause, was clearly established at the time of [the plaintiff's] arrest."). Moreover, the averment is

8

sufficient to constitute individual action by a supervisor necessary for a § 1983 claim because Harvey allegedly supervised the arrest and directed the constitutional violation to occur. McKenna v. City of Philadelphia, 582 F.3d 447, 460 (3d Cir. 2009) ("To be liable . . . a supervisor must have been involved personally, meaning through personal direction or actual knowledge and acquiescence, in the wrongs alleged."). Additionally, there are no circumstances alleged in the Complaint to suggest that Harvey's actions were objectively reasonable under the circumstances. Accordingly, the Court finds that Plaintiff's allegations that Defendant Harvey supervised and advised Defendant Stchur on his investigation and the arrest of Plaintiff may not be dismissed on the basis of qualified or absolute immunity.

V. **CONCLUSION**

In conclusion, the Court finds that Plaintiff's allegations that Defendant Harvey maliciously prosecuted him, purposefully withheld discovery documents, and violated his right to equal protection by failing to prosecute others similarly situated, are dismissed on the basis of absolute immunity. The claims that Defendant Harvey advised PSP officers to unlawfully investigate and arrest Plaintiff are not dismissed at this time, because there is insufficient information in the Complaint to determine whether absolute immunity applies, and Plaintiff has adequately alleged the violation of a clearly established constitutional right.

An order consistent with this memorandum follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ALAN T. DEFFIBAUGH, :
    Plaintiff, : Civil Action No. 1:09-cv-1749
 :
v. : (Chief Judge Kane)
 :
DWIGHT HARVEY, JOHN BROWN, :
STACY GELVIN, JOHN STCHUR, :
JEFFREY WATSON, WILLARD :
OLIPHANT, TARA PATTERSON, and :
THE PENNSYLVANIA STATE POLICE :
    Defendants :

## ORDER

**AND NOW**, this 20th day of March 2010, upon consideration of Defendant Harvey's motion to dismiss (Doc. No. 13), **IT IS HEREBY ORDERED** that the motion is **granted in part and denied in part**. All claims against Defendant Harvey are dismissed on the basis of absolute immunity except for Plaintiff's claim that Defendant Harvey advised and supervised PSP officers in their actions of improperly investigating, charging, and arresting Plaintiff.

                                                   *S/ Yvette Kane*
                                                   Yvette Kane, Chief Judge
                                                   United States District Court
                                                   Middle District of Pennsylvania