IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| ALAN T. DEFFIBAUGH, | : | |
| --- | --- | --- |
| | : | Civil Action |
| Plaintiff, | : | |
| | : | No. 1:09-1749 |
| v. | : | |
| | : | |
| DWIGHT HARVEY, et. al., | : | |
| | : | |
| Defendants. | : | |

## **M E M O R A N D U M**

**STENGEL, J.**                                                                              September 19, 2013

      Plaintiff Alan T. Deffibaugh filed this civil rights action pursuant to 42 U.S.C. § 1983 against former Fulton County District Attorney Dwight Harvey, the Pennsylvania State Police, and the following current and former members of the Pennsylvania State Police: John Brown, Stacy Gelvin, John Stchur, Jeffrey Watson, Willard Oliphant and Tara Patterson. The complaint alleges violations of plaintiff's First, Fourth and Fourteenth Amendment rights. Three motions for summary judgment are currently pending before the court. The first motion is filed by defendant Harvey; the second motion is filed by defendant Gelvin; and the third motion is filed by the remaining defendants. I referred the motions to Magistrate Judge Smyser for a report and recommendation.

      Judge Smyser recommends that I grant the three pending motions for summary judgment, expect with regard to plaintiff's Fourth and Fourteenth Amendment claims against the defendants Brown, Stchur, Watson and Oliphant. The defendants object to

this portion of the report.  Plaintiff objects only to the Judge Smyser's recommendation that I grant defendant Harvey's motion.  Neither plaintiff nor the defendants responded to each other's objections.  For the following reasons, I overrule plaintiff's objections, sustain the defendants' objections, and grant all three motions for summary judgment in full.

I. BACKGROUND[1]

Judge Smyser comprehensively summarized the facts involved in this case in the report and recommendation; therefore, I will only memorialize those facts necessary to resolve the objections to the report.

Alan T. Deffibaugh is a former Pennsylvania State Police Trooper.  Doc. No. 45 ¶ 3.  Plaintiff met defendant Gelvin, a police communications officer, when he was assigned to the McConnellsburg Station.  Id. at ¶ 8.  In April 2006, defendant Gelvin accused plaintiff, Trooper Copley and Trooper Kagarise of committing various inappropriate acts and communications of a sexual nature toward her.  Id. at ¶ 17.  Defendant Stchur, a corporal in the internal affairs division, initiated an investigation into the allegations.  Id. at ¶ 10, 18-19.  Defendant Oliphant is the Director of the Internal Affairs division.  Id. at ¶ 42.  The accused troopers were transferred to another Barracks during the course of the investigation.  Id. at ¶ 20. The State Police later terminated Copley when he admitted to the allegations.  Id. at ¶ 24.

As a result of the investigation, Defendant Watson, plaintiff's commander, concluded that plaintiff had subjected defendant Gelvin to various acts of sexual

---

[1] The facts in this section are undisputed unless otherwise noted.

harassment and indecent assault. Id. at 45 ¶ 35. These conclusions were based on several factors. First, the IAD reviewed records of mobile data communications between plaintiff and defendant Gelvin which detail several of plaintiff's sexual advances toward defendant Gelvin. Id. at ¶ 37.[2] Second, plaintiff admitted to confronting defendant Gelvin with nude pictures of herself, which plaintiff claims he found in an envelope in his patrol car. Id. at ¶ 39. Finally, defendant Gelvin alleged that plaintiff had forced himself on her in her own home and that he exposed his genitals to her at the barracks. Doc. No. 42 ¶ 27. Since the allegations against Troopers Copley and Kagarise were verified, investigators found the allegations against Plaintiff to be credible. Id. at ¶ 40.[3]

Pursuant to State Police procedures, the IAD sent a copy of the investigation to defendant Harvey requesting a prosecutorial decision in September 2006. Id. at ¶ 44. Defendant Harvey interviewed defendant Gelvin. Based on the interview and a review of the investigation, defendant Harvey recommended that the State Police file charges against the plaintiff for indecent exposure, indecent assault (2 counts), stalking (3 counts), harassment (3 counts) and intimidation of witnesses (2 counts). Doc. No. 50 Ex. 4.

Plaintiff insisted that defendant Gelvin was not credible because she had committed perjury. Doc. No. 45 ¶ 63. His claim is based on testimony which defendant Gelvin gave in 2005 during an unrelated matter in federal court. Id. at ¶ 61. In that testimony, she stated that she had not seen anyone do any acts that she thought were

---

[2] While Plaintiff makes various objections to the mobile data communications, he never denies sending the communications detailed in the Report and Recommendation.
[3] Plaintiff argues that Defendant Gelvin was not credible; however, this finding is based on Defendant Watson's sworn deposition testimony.

inappropriate at the barracks and that she did not feel sexually harassed. Doc. 67-3 at 11-12. Based on these allegations, defendant Harvey reviewed the trial transcripts. Doc. No. 45 ¶ 63. However, he found that the defendant had not committed perjury, because the questions were narrow in scope, involved a narrow time frame and referred to people involved in that case. Id. He authorized proceeding with the criminal charges. Id.

In March 2007, defendant Stchur filed criminal charges against plaintiff. The State Police suspended plaintiff upon being criminally charged. Id. at ¶ 49. A magisterial district judge found probable cause, Doc 78 ex. 2 at 18-25, and all charges except for intimidation of witnesses were bound over for trial. Doc 45 ¶ 52. However, Travis Kendall succeeded defendant Harvey as District Attorney and issued a *nolle prose* on all charges against plaintiff on July 15, 2008. Id. at ¶ 67. The State Police reinstated plaintiff five days later. Id. at ¶ 69. Plaintiff was terminated from employment with the State Police on July 15, 2010. Id. at ¶ 70.

## II. STANDARD OF REVIEW

I review de novo those portions of the magistrate judge's report to which timely and specific objection is made. 28 U.S.C. § 636(b)(1); Goney v. Clark, 749 F.2d 5, 6 (3d Cir. 1984). Where objections are untimely, general, or not filed at all, I need only "give some reasoned consideration to the magistrate's report," Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987), and review it for clear error. S*ee* Fed. R. Civ. P. 72(b) advisory committee's note. In any case, I "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." § 636(b)(1); U.S. v.

4

Raddatz, 447 U.S. 667, 676 (1980). I may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions. §636(b)(1)

## III. DISCUSSION

### A. Defendants' Objections

#### 1. Fourth Amendment Claims

Plaintiff's Fourth Amendment claim against defendants is one for malicious prosecution pursuant to 42 U.S.C. § 1983. "To prove malicious prosecution under section 1983 when the claim is under the Fourth Amendment, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007). Failure to satisfy any one of these elements is fatal to the claim. Kossler v. Crisanti, 564 F.3d 181, 186-87 (3d Cir. 2009).

I address only the probable cause element because it is dispositive of Plaintiff's claim. "Probable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt. [P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir.1995) (citations omitted). Therefore,

5

we look at the facts before defendants as of the time they filed charges against plaintiff.
If the defendants reasonably believed that facts satisfied the elements of the crimes
charged, then the defendants had probable cause which is fatal to plaintiff's claim.

While Judge Smyser found that probable cause existed for some of the charges[4], he noted that he did not know "specifically what evidence was before defendant when the charging decision was made." Doc. No. 72 at 53. In their objections, defendants have submitted the affidavit of probable cause which sets forth the facts supporting the charges filed against plaintiff. These facts are sufficient to establish probable cause for all of the offenses charged.

The affidavit of probable cause was sworn to by defendant Stchur. In support of the two charges for indecent assault, Stchur relied on an interview with defendant Gelvin wherein she reported that plaintiff often grabbed her breast. Doc. No. 78 Ex. 2 at 24. She also reported a specific incident when she and the plaintiff were working the overnight shift. Id. During the shift, the plaintiff threw an object on the defendant Gelvin's lap and groped her genitals when he reached for the object. Id. On the same night, plaintiff grabbed defendant Gelvin's backside when she reached into the back seat of the patrol car to reach her bag. Id.

The affidavit of probable cause also describes the facts giving rise to the charges for stalking and harassment. The defendants based these charges on the multiple mobile data communications which document plaintiff's sexual advances toward defendant Gelvin. Id. Further, defendant Gelvin reported to defendant Stchur that plaintiff once

---

[4] Judge Smyser found that the charge of indecent exposure was supported by probable cause, and I adopt this finding.

6

showed up at her residence and forcefully tried to kiss her, and that on numerous occasions the plaintiff drove by or park outside her residence. Additionally, plaintiff showed up at an athletic event she had attended.

Finally, the affidavit supports the charge of intimidation of witness charge. While defendant Stchur was still investigating defendant Gelvin's allegations, plaintiff approached defendant Gelvin at a Walmart store. Defendant Gelvin reported that the plaintiff tried to persuade her not to reveal any incidents more than two years old because internal affairs could not investigate any incidents older than two years.

These facts are sufficient to establish probable cause for the charges. "Although, generally, the question of probable cause in a section 1983 damage suit is one for the jury, a district court may conclude that probable cause did exist as a matter of law if the evidence, viewed most favorably to plaintiff, reasonably would not support a contrary factual finding. Estate of Smith v. Marasco, 318 F.3d 497, 514 (3d Cir. 2003)" Here, plaintiff does nothing to rebut the facts in the affidavit of probable cause. Rather, he argues that defendant Gelvin was not credible, because she committed perjury. However, defendant Harvey investigated plaintiff's charges of perjury and determined that the charges were unfounded. Plaintiff also asserts that all of the defendants knew that defendant Gelvin was a liar, but to the contrary, the defendants found her credible based on the fact that her allegations against Troopers Copley and Kagarise were true.

The affidavit shows that the defendants had probable cause to charge the plaintiff with all eleven counts. The facts laid out in the affidavit establish each element of the crimes charged. Thus, an officer with this knowledge would reasonably believe that a

7

crime has been committed. The defendants actions were all the more reasonable considering that they filed charges only after seeking legal advice from defendant Harvey. Further, a magisterial district judge found probable cause based on defendant Stchur's affidavit. As a result, the plaintiff cannot satisfy the probable cause element for his malicious prosecution claim which is fatal. Therefore, I grant the defendants' motion as to the plaintiff's Fourth Amendment claims.[5]

### 2. Fourteenth Amendment Claims

Judge Smyser recommends that I also deny defendants' motion as to plaintiff's Fourteenth Amendment procedural due process and equal protection claims. Judge Smyser did not address the substance of these claims, because they were not briefed. Doc. No. 72 at 54. In their objections, the defendants contend that although they do "not believe they were properly put on notice to these allegations within the complaint, . . . any such claims must fail." Doc. No. 78 at 17. I agree that, to the extent they are asserted, these claims fail as a matter of law.

### i.) Procedural Due Process

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)). Defendants' confusion is understandable, as the complaint does not

---

[5] Since I find that there was no constitutional violation, I will not analyze the defendants' claim for qualified immunity.

8

state a plausible procedural due process claim. Indeed, plaintiff fails to allege even those most basic facts, such as what protected interest he was deprived and how the procedures available to him were inadequate. Defendants are therefore entitled to judgment on this claim. For the sake of thoroughness, however, I will address its potential merits.

Plaintiff might have alleged a deprivation of his "enforceable property right in continued employment," Pipkin v. Pennsylvania State Police, 693 A.2d 190, 193 (Pa. 1997); 71 Pa. Stat. Ann. § 65(e), which he possessed as non-probationary state trooper. A review of the complaint reveals two possible bases for this claim. The first is plaintiff's transfer to a different barracks on May 3, 2006, pending defendant Schtur's investigation into defendant Gelvin's allegations of sexual harassment. Inasmuch as this action did not effect a termination, reduction in rank, or other deprivation of continued employment with the State Police, it cannot support plaintiff's procedural due process claim. Lane v. Bonin, 772 F. Supp. 2d 678, 680 n.3 (W.D. Pa. 2011) (finding that state trooper's transfer to another barracks pending investigation into sexually harassing conduct did not deprive him of property right in continued employment).

The second is Plaintiff's suspension without pay on March 16, 2007, following his arrest. I assume Plaintiff's suspension without pay infringed his property right in continued employment. Skrutski v. Marut, 288 F. App'x 803, 808 (3d Cir. 2008) (finding that state trooper suspended without pay "established a requisite deprivation of property" for purpose of procedural due process claim). It is clear from Plaintiff's own allegations, however, that he received due process. Although due process generally requires pre-deprivation notice and a hearing, Schmidt v. Creedon, 639 F.3d 587, 595-97 (3d Cir.

9

2011), the Supreme Court has held that a police officer who is arrested and criminally charged may be immediately suspended without a prior hearing, Gilbert v. Homar, 520 U.S. 924, 931-35 (1997); see also Solomon v. Philadelphia Hous. Auth., 143 F. App'x 447, 454 n.10 (3d Cir. 2005) ("An actual arrest, of course, would assure that there are reasonable grounds to support the suspension, and thus minimize the risk of an erroneous deprivation."). That is precisely what occurred in plaintiff's case.

The question then is whether plaintiff received adequate post-deprivation process. Gilbert, 520 U.S. at 930. "Grievance procedures provided in collective bargaining agreements may satisfy due process." Skrutski, 288 F. App'x at 809 (citing Dykes v. Se. Pennsylvania Transp. Auth., 68 F.3d 1564, 1572 n.6 (3d Cir. 1995)). Here, there is no question that plaintiff had notice of the charges giving rise to his suspension, and his recognition that he "grieve[d] his situation," Compl. ¶ 65, without any allegation that the procedures employed were inadequate, forecloses any procedural due process claim stemming from his suspension.

I note two additional points. First, plaintiff alleges that the five-day delay in restoring his employment following the *nolle prosequi* constituted a "denial of his rights to due process." Compl. ¶ 68. I fail to see how the defendants' prompt efforts to restore his employment could have possibly constituted a denial of his right to continued employment. In any event, in light of the law discussed above, plaintiff has at most a property interest in not being terminated, suspended, or demoted. Thus, no procedural due process claim lies for the five-day delay in restoring his employment.

Second, plaintiff was terminated while this lawsuit was pending but after the complaint was filed. Although this would have provided another potential basis for plaintiff's procedural due process claim, he never attempted to amend his complaint to include this allegation and it is therefore not before me. Regardless, because plaintiff availed himself of grievance procedures and has made no claim they were inadequate, this claim would fail.

### ii.) Equal Protection

Plaintiff's equal protection claim appears to rest on just two allegations. First, plaintiff alleges that defendants "violated his equal protection rights by treating him differently then [sic] Kagarise and Copley was [sic] Gelvin had also accused of harassment." Compl. ¶ 45. Because plaintiff alleges nothing more than the defendants "treat[ed] him differently," I construe this language as an attempt to assert a class-of-one claim. However, "such claims are not cognizable in the public employment context." Skrutski, 288 F. App'x at 809 (*citing* Engquist v. Oregon Dep't of Agr., 553 U.S. 591, 594 (2008)). Second, plaintiff alleges that the defendants "selectively and vindictively prosecuted [him] in a reverse discrimination mode." Compl. ¶ 72. This conclusory language is entirely insufficient to state a plausible reverse discrimination claim and does not even permit a hypothetical analysis. Plaintiff again fails to allege vital supporting facts, such as the basis for the alleged discrimination. Thus, I grant the defendants motion for summary judgment as to plaintiff's Fourteenth amendment claims as well.

### B.) Plaintiff's objection

Turning to plaintiff's objection, he contends only that Judge Smyser erred in recommending that I grant defendant Harvey's motion for summary judgment. Doc. No. 82. Specifically, plaintiff reiterates his argument, discussed above, that defendant Gelvin was not credible and that her allegations therefore did not provide a basis for finding probable cause. In this regard, I have little to add to Judge Smyser's analysis. Plaintiff's singular focus on defendant Gelvin's credibility misses the point.

Probable cause does not require that defendant Harvey's "determinations of credibility, were, in retrospect, accurate." Wright, 409 F.3d at 603. Rather, his determination must be reasonable, "in light of the information the officers possessed at the time." Id. Prior to issuing his prosecutorial decision, defendant Harvey reviewed defendant Stchur's findings and interviewed defendant Gelvin. He specifically considered and rejected the contention that defendant Gelvin perjured herself. Faced only with plaintiff's bald assertion that defendant Harvey was wrong, Judge Smyser properly concluded that defendant Harvey did not act unreasonably in light of the information he possessed at the time.

Plaintiff also contends that the Judge Smyser failed to credit his counterstatement of facts and draw inferences in his favor. Plaintiff's counterstatement of facts is rife with unsupported and speculative denials. After reviewing the entire record, I conclude that the Judge Smyser properly considered the facts having evidentiary support in the light most favorable to plaintiff, drawing all reasonable inferences therefrom. Therefore, I overrule plaintiff's objections.

## IV.     CONCLUSION

I have reviewed the remainder of Judge Smyer's report to which no objection was made. I find it be well-reasoned and free of clear error. For the reasons discussed above, I overrule plaintiff's objections; I sustain the defendants' objections, and I grant all three motions for summary judgment in full.

An appropriate order follows.